**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
John K. Sherwood, Esq. (JS 2453)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>OCEAN PLACE DEVELOPMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 11-14295 (___) |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER
SECTION 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE APPROVING THE
USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND
SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Ocean Place Development, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), submits this motion (the "**Motion**") for entry of an interim order pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed.R.Bankr.P. 4001 (i) approving the use of cash collateral, (ii) providing adequate protection, and (iii) setting a final hearing pursuant to Fed.R.Bankr.P. 4001. In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 of the United States Bankruptcy Code and Federal

---

[1] The location of the Debtor's headquarters and its service address is One Ocean Blvd., Long Branch, NJ 07740.

25267/2
02/15/2011 16727105.3

Rule of Bankruptcy Procedure 4001.

## RELIEF REQUESTED

2. By this Motion, the Debtor requests an order:

(a) authorizing the use of AFP 104 Corp.'s ("**AFP**") cash collateral pursuant to the budget (the "**Budget**") attached as **Exhibit A** to the interim order submitted herewith;

(b) granting AFP adequate protection in the form of replacement liens pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code, to the extent AFP's cash collateral is used by the Debtor and to the extent of any diminution in the value of AFP's collateral, with the same priority in the Debtor's post-petition collateral, and proceeds thereof, that AFP held in the Debtor's pre-petition collateral. Moreover, the Debtor believes that there exists an equity cushion that protects AFP's interests in this case; and

(c) giving notice of and scheduling an interim and final hearing pursuant to Bankruptcy Rule 4001.

3. Without the immediate use of cash collateral, the Debtor will be unable to pay ordinary and necessary business expenses including, but not limited to, payroll and related obligations, taxes, utilities, amounts owed to vendors and other suppliers of goods and services, insurance, and other costs of administering its estate. The use of cash collateral as requested herein is therefore critical to preserving the value of the Debtor's estate for all parties-in-interest.

## BACKGROUND

**A.   In General.**

4. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**").

5. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee,

examiner or creditors' committee has been appointed in this chapter 11 case.

6. For information regarding the Debtor's business and the events leading to the filing of this chapter 11 case, the Debtor respectfully refers the Court and parties in interest to the Declaration of William R. Dixon in Support of First Day Motions, filed simultaneously herewith.

**B.    The Debtor's Prepetition Capital Structure.**

**(i)    Secured Debt.**

7. As of the Petition Date, the Debtor owed approximately $57 million to AFP pursuant to a Loan Agreement dated April 25, 2006, as amended from time to time (the "**Loan Agreement**") entered into by and between the Debtor as borrower and Barclays Capital Real Estate Inc. ("**Barclays**") as lender. Borrowings under the Loan Agreement are evidenced by two promissory notes (the "**Notes**") in the amounts of $8,875,000 and $44,000,000 and, upon information and belief, are secured by a Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing executed together with the Loan Agreement (the "**Security Instrument**").

8. In connection with the Loan Agreement and the Security Instrument, the Debtor entered into a Lockbox - Deposit Account Control Agreement with Barclays, The Bank of New York (the "**Bank**")[2] and The West Paces Hotel Group, LLC (the "**Lockbox Agreement**", and together with the Loan Agreement, the Security Instrument and the Notes, the "**Loan Documents**"). Upon information and belief, AFP is the assignee of Barclays' interests under the Loan Documents.

9. Among other things, the Lockbox Agreement requires that deposits of all rents and income generated from the Debtor's property be placed into a designated depository account (the "**Account**") at the Bank for the benefit of AFP. The Lockbox Agreement also established a lockbox (the "**Lockbox**") for the collection and processing of the remittances for

---

[2] Upon information and belief, JP Morgan Chase Bank, NA, has been substituted for the Bank of New York as the "Bank" under the Lockbox Agreement.

-3-

eventual deposit in the Account at the Bank.

10. The borrowings under the Loan Documents matured on January 9, 2008.

**(ii)  Unsecured Debt.**

11. As of the Petition Date, the Debtor owed approximately $59.5 million on account of certain acquisition and development loans provided by Tiburon Shores LLC, Tiburon Capital LLC and William Dixon to the Debtor's predecessor, which obligations were subsequently assumed by the Debtor in 2006. In addition to these unsecured loan obligations, the Debtor owes approximately $1.0 million to its vendors, suppliers and service providers.

**(iii)  Equity.**

12. The Debtor is wholly owned by Tiburon Ocean Place LLC.

**C.  Events Leading To This Chapter 11 Case.**

13. Although the Debtor's operations remain fundamentally sound and operating revenues are on the increase, AFP's control over the Account and the Lockbox and refusal to authorize payment of property and liability insurance have placed the Debtor in a vulnerable position with respect to liquidity needs and asset protection. Furthermore, AFP has obtained a judgment against the Debtor and has scheduled a foreclosure sale for February 22, 2011. Permitting AFP to go through the foreclosure sale and take possession of the Debtor's assets for a discount via a credit bid would cripple the Debtor's business and be detrimental to the interests of the Debtor's other stakeholders. Accordingly, the Debtor took the unavoidable and necessary step of commencing this case to protect its business and assets for all stakeholders.

14. The Debtor is cautiously optimistic that in the context of a chapter 11 proceeding, it will be able to quickly and efficiently restructure the AFP debt, rehabilitate its business, and maximize distributions to all (secured and unsecured) creditors.

**BASIS FOR GRANTING RELIEF REQUESTED**

15. The Debtor seeks Court approval to use AFP's cash collateral in accordance with the Budget attached as Exhibit A to the interim order submitted herewith. As

indicated on the Budget, in connection with the operation of the Debtor's property, the Debtor has significant monthly obligations for taxes, maintenance, payroll, insurance and utilities and other costs to operate and maintain its business assets. The cash collateral consists of receipts collected from the Debtor's patrons and other receivables generated by its business. Absent the use of AFP's cash collateral, the Debtor will be unable to meet these obligations in order to operate on a day-to-day basis and therefore maintain the value of its business as a going-concern. Accordingly, the Debtor has demonstrated that it has an emergent need for the use of cash collateral.

16. The Debtor understands that the Budget submitted herewith shows a shortfall in terms of revenues in the near term. The Debtor expects that its income may be exceeded by its expenses through the month of May, 2011, which period constitutes an "off-season" period for the industry in this geographic area. At the same time, the Debtor's long term projections show a positive income stream and positive cash balance of approximately $2.6 million as of August, 2011. Given that the Debtor will be cash negative from income perspective for the next three (3) months, the Debtor's principals are prepared to provide the Debtor with temporary post-petition financing to fund the Debtor's operations until the summer season and positive cash flow. The Debtor will quickly engage, and in some sense re-engage, in fulsome negotiations with AFP and other potential lenders and parties in interest on the terms of the post-petition financing and will seek the Court's approval of said post-petition financing in the near future.

17. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral includes "rents, or profits of property . . . subject to a security interest as provided in section 552(b) of [the Bankruptcy Code]." 11 U.S.C. § 363(a).

18. The receivables generated from the Debtor's hotel, restaurants, spa operations and other amenities constitute AFP's cash collateral and have been pledged to the AFP (as a successor to Barclays) "as security for the Obligations" under the Loan Documents. Pursuant to the Security Instrument, and more particularly the Debtor's assignment of rents and

leases, the Debtor assigned its land, buildings and improvements located on the land, and all rents, leases and revenues therefrom to AFP.

19. This case is starkly different and is distinguishable from the case of *In re Jason Realty, LP*, 59 F.3d 423 (3rd Cir. 1995) which held that, under New Jersey law, assigned rents cannot be used by a debtor as cash collateral. In this case, (i) the revenues generated by the Debtor, that is a hotel and a resort, are not "rents", (ii) the assignment of rents is nothing more than a pledge of additional security and not an "absolute assignment" of the Debtor's revenues under applicable New York law and (iii) an emerging and growing number of cases now hold that federal bankruptcy law governs what constitutes property of the estate in this context.

### A. Debtor's Receipts Are Not Rents.

20. The Debtor may use its post-petition income because the Debtor's receipts from its business operations are not "rents" that, if properly assigned to a lender who took certain steps to effectuate the assignment, would remove them from property of the estate. The court in *In re General Associate Investors Limited Partnership*, 150 B.R. 756 (Bankr. D. Ariz. 1993), considered the debtor's motion for use of income generated from resort facilities. In permitting the debtor to use post-petition revenues to operate, the *General Associate* court held that the lender did not have a valid lien in the debtor's hotel revenues and revenues from its facilities generated post-petition by operation of section 552 of the Bankruptcy Code. Hotel revenues and revenues from the debtor's facilities were not considered rents because (a) a revenue generated from a hotel guest paying for a hotel room is considered personal property and (b) a hotel guest is a mere licensee with the right to use the premises rather than a tenant who has the right to possess the real property. 150 B.R. at 759. See also *In re Northview Corp.*, 130 B.R. 543 (9th Cir. BAP 1991) (characterizing hotel revenues as personal property characterized as an "account" rather than rent). Section 552 of the Bankruptcy Court grants a pre-petition lender, absent a court ruling to the contrary, a continuing security interest in among other things, post-petition rents, proceeds and profits.

21. New York law, which expressly governs the Loan Documents, mandates a

-6-

similar result. In *In the Matter of Hamsley Enterprises Inc.*, the appellate division considered a dispute concerning the application of certain purpose-for-resale exclusions under New York tax laws. 187 A.D.2d 64, 69 (3rd Dep't 1993). In holding that the hotel's acquisitions of guest room furniture and other furnishings and consumables did not come within the purpose-for-resale exclusion from sales tax liability, the court held that a hotel accommodation is "the creation of a special juridical relationship between innkeeper and guest far different from that of landlord and tenant". 187 A.D.2d at 69. See also *DeWolf v. Ford*, 193 N.Y. 397, 86 N.E. 527, 530 (1908) (a room in an inn is not, in a legal sense, the "dwelling house" of a guest, and the relation is not that of landlord and tenant, for notwithstanding the guest's occupancy, it is the house of the innkeeper); *In re Northport Marina Associates*, 136 B.R. 911, 916 (Bankr. E.D.N.Y. 1992) (citing cases involving hotels, motels and campgrounds which held that revenues from rooms are "accounts" rather then rents). The *General Associate*, *Northview*, *Northport Marina, Hamsley* and *DeWolf* line of cases all hold that hotel receivables are not "rents." Because hotel receivables are not considered rents, an agreement for an absolute assignment of rents executed pre-petition could not remove said assets from a bankruptcy estate. As such, because a lender has a security interest in those assets, they constitute the lender's cash collateral and, upon showing of adequate protection, may be used by a debtor post-petition.

      **B.**    **The Debtor's Assignment Of Rents Is Not An Absolute Assignment But A Pledge Of Collateral.**

22.    Even if the Debtor's receipts were considered "rents", which they are not, the Security Instrument and New York law establish that AFP has nothing more than a security interest in these assets.

23.    First, it is undisputed that the Debtor and Barclays entered in the Security Instrument that is governed by New York law. (See Security Instrument, Section 7.07.) The choice of law clause was specifically negotiated by Barclays. Second, the Security Instrument states that the various assignments of the Debtor's rents, leases, etc. to the lender are made "as security for the Obligations" under the Loan Documents. (*Id*. Section 2.01.) Section 2.2 of the

-7-

Security Instrument also states that "Borrower hereby grants Lender, as security for the Obligations, a security interest in the Property to the fullest extend that Property now or hereinafter may be subject to a security interest under the UCC. Borrower intends for this Security Instrument to be a "security agreement" within the meaning of the UCC." Although Section 2.03 of the Security Instrument attempts to limit these references in the Security Instrument that the assignments were made for purposes of further securing the lender's collateral, by suggesting that "the assignment is effective immediately and not an assignment made for security only," the overall context of the Security Instrument shows the parties' true intent. See e.g., *In re Cavros*, 262 B.R. 206, 209 (Bankr. D. Conn. 2001) (holding that when an assignment agreement includes the characteristics of (a) permitting the debtor to collect rents so long as it was not in default under the mortgage, (b) permitting lender to use post-default rents only to reduce the debtor's obligation to the lender and (c) permitting an automatic termination of the assignment upon of repayment of the debtor's obligations to the lender, do not support an interpretation that the lender became an absolute owner of the rents. See also, *In re Buttermilk Towne Center, LLC*, --- B.R. ---, 2010 WL 5185870 at *4 (6th Cir. BAP) (same); *In re Senior Housing Alternatives, Inc.*, 2011 WL 165991 (Bankr. E.D. Tenn) (permitting use of lender's cash collateral of post-petition rent irrespective of absolute assignment executed pre-petition). The Security Instrument contains these characteristics.

24. Even if the Debtor's receipts were considered "rents," AFP could not argue that it holds an absolute assignment of the Debtor's rents, making the rents property of the estate. Under New York law, "an assignment of rents clause is not self-executing and operates merely as a pledge of the rents, to which the pledgee does not become entitled until he asserts his rights by taking affirmative steps, such as the appointment of a receiver to collect the rents for the benefit of the mortgagee, or obtaining an order for the sequestration of rents." *In re Loco Realty Corp.*, 2009 WL 2883050 at *5 (Bankr. S.D.N.Y.) (citing *In re Pine Lake Vill. Apartment Co.*, 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982) (other citations omitted). See also *Northport Marina*, 136 B.R. at 916 (citing *In re Constable Plaza Assoc., L.P.*, 125 B.R. 98 (Bankr.

S.D.N.Y. 1991); *In re Vienna Park Properties*, 120 B.R. 332 (Bankr. S.D.N.Y. 1990) (applying Virginia law); *In re Riversidde Nursing Home*, 100 B.R.. 683 (Bankr. S.D.N.Y. 1989)); *In re Guardian Realty Group, LLC*, 205 B.R. 1 (Bankr. D. D.C. 1997) (same, applying Delaware law); *In re Amaravathi Limited Partnership*, 416 B.R. 618, 629 (Bankr. S.D. Tex. 2009) (same, applying Texas law). Here, AFP did not seek (nor did it obtain) the appointment of a receiver, nor did it take possession of Debtor's assets. AFP's failure to take these steps makes clear that the Debtor's post-petition receipts are property of the estate under section 541(a)(1) of the Bankruptcy Code and thus constitute AFP's cash collateral that the Debtor can use upon showing of adequate protection.

        **C.**        **Post-Petition Receipts Constitute Property Of The Estate Under The Bankruptcy Code.**

25. Even if state law dictated that post-petition receipts subject to an absolute assignment of rents agreement are governed by state law, a recent and growing trend suggests that that the Bankruptcy Code preempts such laws with respect to what constitutes an asset of a bankruptcy estate. See, e.g., *Amaravathi Limited,* 416 B.R. 618 (holding that section 541(a)(6) preempts state laws on the issue of assignment of rents and permitting debtor to use cash collateral pursuant to section 363 of the Bankruptcy Code) (citing *In re Vienna Park, Props*., 976 F.2d 106 (2d Cir. 1992) (holding that rents generated post-petition from an un-activated collateral assignment were property of the estate)); *In re Bryant Manor LLC*, 422 B.R. 278 (Bankr. D. Kan. 2010) (holding that rents are property of the estate under section 541(a)(6) irrespective of prior appointment of a receiver). These cases hold that when a rent generating property is an asset of the bankruptcy estate, section 541(a)(6) of the Bankruptcy Code dictates that rents arising from property of the estate are also considered property of the estate.

26. In this case, it cannot be disputed that the resort, including the hotel, restaurants and the spa, are property of the estate pursuant to section 541(a)(1) of the Bankruptcy Code and they all generate revenues for the Debtor. Thus, as held in *Amaravathi* and *Bryant Manor* above, the revenues generated from these properties are an asset of the estate. As an asset

of the estate, the Debtor may use its post-petition income -- AFP's cash collateral, to fund its post-petition operations and other expenses. See e.g., *In re Punta Gorda Associates*, 137 B.R. 535 (Bankr. M.D. Fla. 1992) (income generated from a hotel is accounts receivables); *Gen. Associates*, 150 B.R. 756 (same); *Northport Marina Assoc.*, 136 B.R. 911 (Bankr. E.D.N.Y. 1992) (same); *In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr D. Col. 1992) (same).

### D. AFP's Interest In The Debtor's Cash Collateral Will Be Adequately Protected.

27. Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or Court approval. While the Debtor remains hopeful that AFP will consent to the use of its cash collateral, its consent has not been obtained at this time.

28. Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). What constitutes adequate protection is determined on a case-by-case basis. *See In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways under section 361 of the Bankruptcy Code, with the focus being to protect a secured creditor from any diminution in the value of its interest in the collateral during the period during of its use post-petition. See *Swedeland*, 16 F.2d at 564-65; *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995); s*ee also In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E. D. Pa. 1987); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *Swedeland*, 16 F.2d at 564. "Adequate protection" is not defined in the Bankruptcy Code, although section 361 of the

Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *Id.*; *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983).

29. Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by making a cash or periodic payment to the creditor or providing it with a replacement lien. A secured lender is only entitled to adequate protection up to the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Gallegos Research Group.*, 193 B.R. at 584-85 (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988)); *Cann & Saul Steel*, 76 B.R. at 483.

30. Furthermore, the preservation of the Debtor's operations on a going-concern basis will maintain the value of AFP's collateral. Preservation of said collateral demonstrates adequate protection. This will also avoid any abrupt discontinuation of the Debtor's operations. *See In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized."). The Debtor respectfully submits that the protections proposed herein to AFP are appropriate to adequately protect AFP's security interests. Accordingly, the Court should authorize the Debtor use the cash collateral in accordance with the terms of the Budget.

31. Through the use of cash collateral, the Debtor will be able to maintain its operations as a going concern post-petition while protecting and preserving the value of AFP's collateral and the estate's assets. As discussed above, in order to adequately protect AFP's interests, the Debtor proposes to grant AFP replacement liens pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code, to the extent AFP's cash collateral is used by the Debtor and to the extent of any diminution in the value of AFP's collateral, with the same priority in the Debtor's post-petition collateral, and proceeds thereof, that AFP held in the Debtor's pre-petition collateral.

32. In addition, the Debtor believes that its assets have a value that exceeds

the Debtor's obligations to AFP, thus providing AFP with an equity cushion to adequately protect its interests in collateral. The idea that an equity cushion is a form of adequate protection is not novel, and is widely recognized as a legitimate form of adequate protection under section 361 of the Bankruptcy Code. *See*, *e.g.*, *In re Snowshoe Company, Inc.*, 789 F.2d 1085 (4th Cir. 1986); *In re Monnier Bros.*, 755 F.2d 1336 (8th Cir. 1985)(*dictum*); *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984); *In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819 (E.D.Pa. 1987).

33. The existing equity cushion will provide AFP with adequate protection even though the Debtor will not generate positive cash flow in the near term. This is not only because the Debtor believes that AFP's equity cushion is substantial, but also because the Debtor anticipates obtaining post-petition financing from its principals, or other parties, that will preserve the equity cushion. In addition, as set forth above, the Debtor's 6-month projections show a positive cash flow between May and August, with the ending cash balance of approximately $2.6 million (without taking account any post-petition financing and debt-service charges).

34. Through the use of cash collateral, the Debtor anticipates that it will be able to maintain the value of its assets and any equity cushion associated with its assets for the benefit of AFP, other creditors, and the estate. Moreover, the use of cash collateral will prevent the abrupt discontinuation of the Debtor's operations, which would adversely affect the Debtor's ability to reorganize its business through this chapter 11 case. In the hotel and resort industry specifically, even a short shut down of operations results in the cancellation of orders from patrons and commitments to clients and tend to have a long lasting negative effect on future revenues and business operations. Simply put, the Debtor cannot afford that risk.

35. Thus, the best way to ensure that AFP's security interests are not jeopardized is through the use of its cash collateral. *See In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991). The Debtor respectfully submits that the protections proposed herein are appropriate to adequately protect AFP's interests.

36. Absent the immediate entry of the proposed interim order, the Debtor will

be unable to operate in chapter 11 or reorganize its business. Thus, the Debtor respectfully submits that cause has been shown for the entry of the proposed interim order submitted herewith.

37. Accordingly, the Court should authorize the Debtor's use of the cash collateral in accordance with the Budget submitted herewith. Simultaneously, unless further ordered of the Court or agreed to by the Debtor, the Court should authorize and require the Bank to maintain the Account so that the Debtor may pay the expenses set forth in the Budget.

### NOTICE WITH RESPECT TO THE INTERIM ORDER

38. Pursuant to Bankruptcy Rule 4001(b), the Debtor will provide notice of this Motion and the proposed interim order by mail, fax or e-mail (to the extent practicable) to the (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtor's twenty largest unsecured creditors; (vi) AFP, the Debtor's secured lender; (vii) The West Paces Hotel Group, LLC and (viii) JP Morgan Chase Bank, NA. The Debtor respectfully submits that such notice is sufficient and appropriate given the circumstances for the Court to schedule a hearing at which the Debtor can seek the entry of the proposed interim order.

### NOTICE WITH RESPECT TO THE FINAL HEARING

39. Pursuant to Bankruptcy Rule 4001(b), the Debtor respectfully requests that they be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 14 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order entered by the Court, on the (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtor's twenty largest unsecured creditors; (v) AFP, the Debtor's secured lender; (vi) The West Paces Hotel Group, LLC; (vii) JP Morgan Chase Bank NA and (viii) those parties who have filed a notice of appearance and request for service of pleadings in this case

pursuant to Bankruptcy Rule 2002. The Debtor submits that notice would constitute sufficient notice of the final hearing pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Rule 2002.

40. The Debtor has not previously sought the relief requested herein from this or any other Court.

41. The Debtor submits that the Motion does not present novel issues of law requiring the citation to any authority other than that referred to above and, accordingly, no brief is necessary.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted herewith, granting the Motion, and granting it such other and further relief as is just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

 /s/ John K. Sherwood
 Kenneth A. Rosen, Esq. (KR 4963)
 John K. Sherwood, Esq. (JS 2453)
 Wojciech F. Jung, Esq. (WJ 2047)
 65 Livingston Avenue
 Roseland, New Jersey 07068
 Tel: (973) 597-2500
 Fax: (973) 597-2400

*Proposed Counsel to the Debtor and Debtor-in-Possession*

Dated: February 15, 2011
       Roseland, New Jersey