**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
John K. Sherwood, Esq. (JS 2453)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: <br><br> OCEAN PLACE DEVELOPMENT LLC,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 11-14295 (    ) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 507(a)(4) AND 507(a)(5) (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN UNPAID PRE-PETITION EMPLOYEE-RELATED EXPENSES AND EMPLOYEE INSURANCE EXPENSES, AND (II) DIRECTING ALL BANKS TO HONOR PRE-PETITION CHECKS FOR PAYMENT OF PRE-PETITION EMPLOYEE-RELATED EXPENSES AND EMPLOYEE INSURANCE EXPENSES**

Ocean Place Development, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**OPD**"), submits this motion (the "**Motion**") for entry of an Order pursuant to 11 U.S.C. §§ 105(a), 507(a)(4) and 507(a)(5) (i) authorizing the Debtor to pay certain unpaid pre-petition employee-related expenses and employee insurance expenses; and (ii) directing all banks to honor pre-petition checks for payment of pre-petition employee-related expenses. In support of this Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number is 8520.

25267/2
02/15/2011 16734821.3

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. The statutory predicates for the relief requested herein are §§ 105(a), 363(b), 507(a)(4) and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

## BACKGROUND

**A.    General Background**

3. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). in the United States Bankruptcy Court for the District of New Jersey (the "**Court**").

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been requested or appointed in this chapter 11 case.

5. The Debtor is limited liability company, duly organized under and existing pursuant to the laws of the State of Delaware, with principal offices located at One Ocean Boulevard, Long Branch, New Jersey 07740.

6. A more fully detailed description of the Debtor's business, the reasons for commencing this chapter 11 case, and the relief sought from this Court to allow for a smooth transition into chapter 11 is set forth in the Declaration of William R. Dixon, Jr. in

Support of First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith, and is incorporated by reference as though fully set forth herein.

7.  As discussed in the First Day Declaration, Tiburon Ocean Place, LLC, the related predecessor to OPD, originally purchased the landmark property generally known as the Ocean Place Resort & Spa (the "Resort Property") in 2000, chiefly as an operating hotel and resort with certain zoning entitlements for potentially major additional development. The Resort Property is located on the Atlantic beachfront in Long Branch, New Jersey, just 55 miles south of New York City and 82 miles north of Atlantic City. The existing Resort is sited on 17-acres featuring approximately 1,000 feet of ocean frontage and is improved with a 254-room hotel that includes 40,000 square feet of meeting space, three restaurants, a bar/lounge, a full-service spa, and numerous resort amenities.

8.  The number of people employed full-time at the Debtor's Resort Property ranges, depending on the season, between 94 and 340 (the "**Employees**"). The Employees are employed and paid by the Resort's property manager, West Paces Hotel Group, LLC ("**West Paces**") or by a special purpose affiliate thereof, pursuant to the terms of an Operating Agreement dated October 24, 2005 (as amended, the "**Operating Agreement**").[2]

9.  The costs of the Employees at the Resort Property are part of the "Gross Operating Expenses" that are reimbursed by the Debtor to West Paces under the Operating Agreement. The Operating Agreement defines "Gross Operating Expenses" to include the following:

> "**Gross Operating Expenses**" means the following expenses: (i) all salaries and employee expense and taxes (including salaries, wages, bonuses and other compensation of Hotel Employees and their social benefits which shall include, but not be limited to, life, medical and disability insurance and retirement benefits, and any and all matters relating to

---

[2] A copy of the Operating Agreement is attached hereto as **Exhibit A**.

employees, including, but not limited to, claims or losses suffered as a result of activities of the employees, acting either within or outside the scope of their employment and termination and Transition Expenses);

(ii) employee training expenses;

Operating Agreement, § 1.1 at p. 4. *See also id.* at § 2.3 ("The cost and expense of all Hotel Employees (including, without limitation, the costs of forming and maintaining any entity formed solely to employ the Hotel Employees) shall be part of Gross Operating Expenses.").

10. The Employees are paid on a bi-weekly basis. The current average bi-weekly payroll for the Employees is approximately $194,000. In addition, the amount of payroll taxes and employee benefits to be paid on account of the Employees are estimated to be an additional 25% of that amount or approximately $49,000 for a bi-weekly total of $288,000. Payroll for the Employees has been previously paid through February 4, 2011. Accordingly, as of the Petition Date, the Employees' accrued unpaid wages, payroll taxes and benefits was approximately $206,000 plus the accrued costs and expenses of insurance benefits provided to the Employees including, but not be limited to, life, medical and disability insurance.

11. Additionally, pursuant to the Operating Agreement, West Paces is required to "procure and maintain, in its own name and on behalf of" OPD (i) "Workers' compensation coverage as may be required under applicable laws covering all of Operator's employees at the Hotel, and employer's liability insurance of not less than U.S. $2,000,000 per accident/disease" and "Employment practices liability insurance covering all of Operator's employees at the Hotel, to the extent available at commercially reasonable rates and terms, in an amount not less than U.S. $1,000,000." Operating Agreement, § 8.2.

## RELIEF REQUESTED

12. Although the Employees are not technically employees of the Debtor, the continued, uninterrupted, faithful and diligent service of the Employees is absolutely

essential to the Debtor's continuing operations and a successful chapter 11 process, particularly in light of the service-orientated nature of the Debtor's business. To minimize the personal hardship the Employees will suffer if prepetition Employee-related obligations are not paid when due, and to maintain the Employees' morale during this critical time, the Debtor, by this Motion, seeks authority, but not the obligation, to pay West Paces that portion of the accrued Gross Operating Expenses that relates to the costs and expenses of the Employees' ordinary compensation and benefits, but not including any costs or expenses for bonus, incentive or other non-ordinary compensation (the "**Employee-Related Expenses**") that remains unpaid as of the Petition Date, aggregating approximately $206,000. Additionally, the Debtor seeks authority, but not the obligation, to pay West Paces that portion of the accrued Gross Operating Expenses that relates to the costs and expenses of insurance benefits provided to the Employees including, but not be limited to, life, medical and disability insurance (the "**Employee Insurance Expenses**") that remains unpaid as of the Petition Date.

13.     Pending the assumption or rejection of the Operating Agreement, the Debtor will continue to the satisfy the Employee-Related Expenses and Employee Insurance Expenses so that all obligations to the Employees will remain current. The bolstering of Employee morale by the payment of the Employee-Related Expenses and Employee Insurance Expenses will be a benefit to the Debtor's estate even if the Debtor determines to reject the Operating Agreement because, in such a case, the Debtor or a successor property manager will likely hire many of the Employees directly.

14.     Additionally, the Debtor (i) requests that the Court authorize and direct applicable banks and other financial institutions to receive, process, honor and pay all pre-petition checks and transfers drawn on the Debtor's accounts and to make the foregoing payments, and (ii) seek authority to pay all processing costs and administrative expenses related to the foregoing payments. The Debtor believes that any payments that will be made

in connection with pre-petition wages, salary, other compensation and benefit programs will not exceed the sum of $11,725.00 per employee allowable as a priority claim under sections 507(a)(4) and (5) of the Bankruptcy Code.

## BASIS FOR RELIEF

15.     Any delay in paying the Employee-Related Expenses and Employee Insurance Expenses would severely disrupt the Debtor's relationship with the Employees and irreparably impair the Employees' morale at the very time that their dedication, confidence and cooperation are most critical.  The Debtor faces the risk that its operations may be severely impaired if it is not granted authority to pay the Employee-Related Expenses and Employee Insurance Expenses.  At this critical stage, the Debtor simply cannot risk the substantial disruption of its business operations that would attend any decline in workforce morale attributable to the Debtor's failure to pay the Employee-Related Expenses and Employee Insurance Expenses in the ordinary course of business.

16.     The Debtor submits that the relief requested in this Motion is warranted under sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Further, section 105(a) provides, in pertinent part, that the "Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

17.     The Employee-Related Expenses are accorded priority of payment under 11 U.S.C. § 507(a)(4), which provides priority payment for:

> allowed unsecured claims, but only to the extent of $11,725.00 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –

>> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

18. Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan -
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of -
>
> (i) the number of employees covered by each such plan multiplied by $11,725.00; less
>
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

19. No Employee will receive payments in excess of the $11,725.00 limit established pursuant to sections 507(a)(4) and (5) of the Bankruptcy Code for accrued but unpaid Employee-Related Expenses and Employee Insurance Expenses. The Debtor believes that the payment of the Employee-Related Expenses and Employee Insurance Expenses is critical, especially in light of the need to maintain the morale of the Employees and during the pendency of this chapter 11 case.

20. Courts have permitted a debtor-in-possession to pay certain creditors' pre-petition claims under Bankruptcy Code section 105(a), as well as under the necessity of payment doctrine. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, the Bankruptcy Court has the power to take "whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 COLLIER ON BANKRUPTCY § 105.01, at 105-3 (15th ed. 1996).

21. Courts have frequently used their authority under section 105(a) of the Bankruptcy Code and the necessity of payment doctrine to authorize debtors in possession to pay pre-petition claims, especially pre-petition wage, salary, benefit, and expense claims. *See, e.g., In re Marcal Paper Mills, Inc.*, Case No. 06-21886 (Bankr. D.N.J. December 4, 2006) (MS) (authorizing debtor to pay pre-petition payroll, taxes, and employee reimbursement obligations and honor pre-petition employee benefits); *In re 1945 Route 23 Associates, Inc. and R & S Parts and Service Inc.*, Case No. 06-17474 (Bankr. D.N.J. August 11, 2006) (NLW) (same); *In re Pliant Corporation,* Case No. 06-10001 (Bankr. D. Del. January 31, 2006) (MFW) (authorizing the payment of pre-petition wages, salaries and other compensation); *In re Foamex International Inc.,* Case No. 05-12685 (Bankr. D. Del. September 20, 2005) (PJW) (same); *In re Pharmaceutical Formulations, Inc.,* Case No. 05-11910 (Bankr. D. Del. July 12, 2005) (MFW) (same); *In re Meridian Automotive Systems -- Composites Operations, Inc., et al.,* Case No. 05-11168 (Bankr D. Del. May 27, 2005) (MFW) (same); *In re Just For Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (holding that the so-called "necessity of payment doctrine" justified the payment of pre-petition claims where such payment is "critical to the debtor's reorganization"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021 (Bankr. S.D. Ohio 1991) (applying the doctrine of necessity); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (authorizing Eastern Air Lines, Inc. to pay pre-bankruptcy wages, salaries, medical benefits, and business expense claims and relying on equitable powers under 11 U.S.C. § 105(a) to effectuate a complete

restructuring of debtor's finances to provide continuing jobs for its employees); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("if payment of a claim that arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus"); *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D.Pa. 1993) (embracing the "necessity of payment doctrine").

22. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176. The Court in *Ionosphere Clubs* considered two factors, the retention of current employees and employee morale, as critical to the debtor's rehabilitation. *See id.*

23. Here, it is essential to the Debtor's ability to continue to operate its business that the Employees continue to provide services and that their morale be preserved**.** Thus, the payment of the Employee-Related Expenses and Employee Insurance Expenses falls under the "necessity of payment" doctrine first enunciated by the Supreme Court over a century ago in *Miltenberger v. Logansport C & S.W.R. Co.*, 106 U.S. 286 (1882). Under this doctrine, courts have the ability to permit a reorganizing debtor to make postpetition payments on pre-petition claims where payment is necessary to effectuate a successful reorganization. *See also Lehigh & New England Ry.*, 657 F.2d at 581 (explaining that "the *sine qua non* for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). The Employees are critical to the Debtor's reorganization efforts. Should the Employee-Related Expenses and Employee Insurance Expenses go unpaid, the Employees will likely be unwilling to continue working for West Paces at the Resort Property, thereby significantly reducing the Debtor's chances of a successful reorganization.

24. Courts have routinely granted Chapter 11 debtors the same or substantially similar relief to that requested in this Motion. *See, e.g., In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (approving a Bankruptcy Court's order authorizing the payment of certain pre-petition wages, salaries, employment reimbursement expenses, and benefits, including payment on workers' compensation claims); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition employee wages and benefits, as well as health, life, and workers' compensation insurance premiums).

## NOTICE

25. No trustee, examiner or, creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtor's twenty largest unsecured creditors; (v) AFP, the Debtor's secured lender; (vi) JPMorgan Chase Bank, NA; (vii) West Paces Hotel Group, LLC; and (viii) those parties who have filed a notice of appearance and request for service of pleadings in the chapter 11 case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

## NO PRIOR REQUEST

26. No previous motion for the relief sought herein has been made to this or to any other court.

## WAIVER OF BRIEF

27. As no novel issue of law is raised and the relevant authorities relied upon by the Debtors are set forth herein, the Debtor respectfully requests that the requirement under D.N.J. LBR 9013-2 of filing a brief be waived.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (i) authorizing the Debtor, in accordance with its policies and in its sole discretion to pay the Employee-Related Expenses and Employee Insurance Expenses (ii) authorizing and directing applicable banks and other financial institutions to receive, process, honor and pay all pre-petition checks and transfers drawn on the Debtor's accounts and to make the foregoing payments; and (iii) grant such other and further relief as this court deems just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

 */s/ John K. Sherwood*_____
 Kenneth A. Rosen, Esq. (KR 4963)
 John K. Sherwood, Esq. (JS 2453)
 Wojciech F. Jung, Esq. (WJ 2047)
 65 Livingston Avenue
 Roseland, New Jersey 07068
 Tel: (973) 597-2500
 Fax: (973) 597-2400

*Proposed Counsel to the Debtors and Debtors-in-Possession*

Dated: February 15, 2011
        Roseland, New Jersey

-11-