**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OCEAN PLACE DEVELOPMENT LLC, | ) | Case No. 11-14295 (MBK) |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

**DEBTOR'S PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Wojciech F. Jung, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Attorneys for the Debtor and Debtor in Possession*

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**AND GOVERNING LAW**...............................................................................................1
    A.      Defined Terms ...........................................................................................................1
    B.      Rules of Interpretation ............................................................................................8
    C.      Computation of Time ...............................................................................................8
    D.      Governing Law .........................................................................................................8
    E.      Reference to Monetary Figures.............................................................................9
    F.      Reference to the Debtor or the Reorganized Debtor ..........................................9

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**.................9
    A.      Administrative Claims.............................................................................................9
    B.      Priority Tax Claims ...............................................................................................10
    C.      Other Priority Claims ...........................................................................................10
    D.      Statutory Fees ........................................................................................................10

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............11
    A.      Classification of Claims and Interests ................................................................11
    B.      Summary of Classification ....................................................................................11
    C.      Treatment of Claims and Interests .....................................................................11

**ARTICLE IV. ACCEPTANCE REQUIREMENTS** ............................................................13
    A.      Acceptance or Rejection of the Plan ...................................................................13
    B.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ...........13

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................13
    A.      The DIP Facility .....................................................................................................13
    B.      AFP Exit Documents/Fifth Amendment/Capital Contribution Agreement.............13
    C.      Sources of Consideration for Plan Distributions ..............................................14
    D.      Issuance of Plan Securities ...................................................................................14
    E.      Cancellation of Securities and Agreements........................................................14
    F.      Section 1145 Exemption........................................................................................14
    G.      Corporate Existence ..............................................................................................14
    H.      Post Effective Date Management .........................................................................15
    I.      Vesting of Assets in the Reorganized Debtor ....................................................15
    J.      Restructuring Transactions...................................................................................15
    K.      Corporate Action ...................................................................................................15
    L.      Effectuating Documents; Further Transactions ...............................................16
    M.      Exemption from Certain Taxes and Fees ...........................................................16
    N.      Preservation of Rights of Action .........................................................................16

**ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**....................16
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases............16
    B.      Payments Related to Assumption of Executory Contracts and Unexpired Leases ................17
    C.      Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired
             Leases .....................................................................................................................17
    D.      Contracts and Leases Entered Into After the Petition Date..............................17
    E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.............17
    F.      Reservation of Rights............................................................................................18
    G.      Rejection Claims Bar Date ...................................................................................18

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS**.......................................18
    A.      Record Date for Distributions .............................................................................18
    B.      Timing and Calculation of Amounts to Be Distributed ....................................18

C.       Disbursing Agent.........................................................................................19
D.       Rights and Powers of Disbursing Agent....................................................19
E.       Distributions on Account of Claims Allowed After the Effective Date......19
F.       Delivery of Distributions and Undeliverable or Unclaimed Distributions ..........19
G.       Withholding and Reporting Requirements.................................................20
H.       Setoffs.........................................................................................................20
I.       Claims Paid or Payable by Third Parties...................................................20

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS..........................................................................................................21
A.       Prosecution of Objections to Claims..........................................................21
B.       Allowance of Claims and Interests.............................................................21
C.       No Distributions Pending Allowance..........................................................21
D.       Distributions After Allowance....................................................................21
E.       Estimation of Claims...................................................................................22
F.       Expungement or Adjustment to Claims Without Objection.......................22
G.       Deadline to File Objections to Claims .......................................................22

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS .....................22
A.       Compromise and Settlement of Claims, Interests, and Controversies .....................22
B.       Releases by the Debtor................................................................................22
C.       Releases by Holders of Claims and Interests .............................................23
D.       Exculpation.................................................................................................24
E.       Discharge of Claims and Termination of Interests ....................................24
F.       Injunction....................................................................................................24
G.       Term of Injunctions or Stays......................................................................25
H.       Protection Against Discriminatory Treatment...........................................25
I.       Setoff and Recoupment...............................................................................26
J.       Release of Liens..........................................................................................26
K.       Releases of Governmental Claims..............................................................26

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
EFFECTIVE DATE.............................................................................................................26
A.       Conditions Precedent to Confirmation.......................................................26
B.       Conditions Precedent to the Effective Date................................................26
C.       Waiver of Conditions..................................................................................27
D.       Effective Date..............................................................................................27
E.       Effect of Failure of Conditions...................................................................27

ARTICLE XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...............................27
A.       Modification and Amendments....................................................................27
B.       Effect of Confirmation on Modifications ...................................................27
C.       Revocation or Withdrawal of the Plan........................................................28

ARTICLE XII. RETENTION OF JURISDICTION ..............................................................................28

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............................................................................30
A.       Immediate Binding Effect...........................................................................30
B.       Additional Documents.................................................................................30
C.       Reservation of Rights..................................................................................30
D.       Successors and Assigns...............................................................................30
E.       Service of Documents..................................................................................30
F.       Entire Agreement.........................................................................................31
G.       Severability of Plan Provisions...................................................................31
H.       Exhibits.......................................................................................................31
I.       Votes Solicited in Good Faith.....................................................................31

J.      Closing of Chapter 11 Case .................................................................................................32
K.      Conflicts ..............................................................................................................................32
L.      Filing of Additional Documents ........................................................................................32

## INTRODUCTION

Ocean Place Development LLC, the debtor-in-possession in the above-captioned Chapter 11 Case, respectfully proposes the following plan of reorganization under chapter 11 of the Bankruptcy Code.  Capitalized terms used in the Plan and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION,

## COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.        "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 327, 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any retained Professional in the Chapter 11 Case, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount).  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.        "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code; (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (e) Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

3.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.        "*AFP*" means AFP 104 Corp., together with its successors and assigns.

5.        "*AFP Action*" means the action filed by AFP in the Supreme Court of the State of New York, County of New York, against William R. Dixon, Jr., Tiburon Capital LLC, Tiburon Ocean Place LLC, David L. Orr, and Orr Partners, LLC, Index No. 650436/2011.

6.        "*AFP Action Defendants*" means, collectively, William R. Dixon, Jr., Tiburon Capital LLC, Tiburon Ocean Place LLC, David L. Orr, and Orr Partners, LLC, defendants in the AFP Action.

7.        "*AFP Exit Documents*" means, collectively, all related agreements, documents or instruments to be executed by Reorganized OPD on or before the Effective Date, including any agreements, amendments, supplements or documents related thereto, which evidence Reorganized OPD's obligation to AFP in the amount of $47,252,801.26 and provide for the grant of Liens on and security interests in substantially all of Reorganized

OPD's assets to and for the benefit of AFP, the substantially final form of which shall be Filed as part of the Plan Supplement.

8. "*AFP Judgment*" means, collectively, all judgments entered in the Foreclosure Action.

9. "*Allowed*" means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; *provided, however,* that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been Filed, is not considered Allowed and shall be expunged without further notice or hearing.

10. "*Balloting Agent*" means Lowenstein Sandler PC, located at 65 Livingston Avenue, Roseland, NJ 07068, (973) 597-2500.

11. "*Ballot*" means the ballot accompanying the Disclosure Statement upon which certain Holders of Impaired Claims and Interests entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the District of New Jersey, the United States District Court for the District of New Jersey.  The Bankruptcy Court is located at Clarkson S. Fisher US Courthouse, 402 East State Street, Trenton, New Jersey  08608.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15. "*Barclays*" means Barclays Capital Real Estate, Inc., together with its successors and assigns.

16. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

18. "*Capital Contribution Agreement*" means that certain agreement entitled "Binding Commitment to Make Capital Contribution" and dated June 17, 2011 by and between OPD, OPN, Tiburon and Forest Lake Realty, LLC setting forth the $5 million capital contribution by Forest Lake Realty, LLC to the Reorganized OPD.

19. "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff,

counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

20.      "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court under Case No. 11-14295 (MBK).

21.      "*City*" means the City of Long Branch, New Jersey.

22.      "*City Judgments*" means, collectively, judgments and orders in favor of the City and against William R. Dixon, Jr. Tiburon Capital LLC, David L. Orr and Orr Partners, LLC, entered in case Docket No. MON-L-4604-08.

23.      "*Claim*" means any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

24.      "*Claims Bar Date*" means the dates established in the Bankruptcy Case by which Proofs of Claim must be Filed.

25.      "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

26.      "*Claims Register*" means the official register of Claims maintained by Bankruptcy Court.

27.      "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28.      "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in  Article X.A hereof having been:  (a) satisfied; or (b) waived pursuant to Article X.C hereof.

29.      "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

30.      "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

31.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.      "*Consummation*" means the occurrence of the Effective Date.

33.      "*Cure Claim*" means a Claim based upon a monetary default, if any, by the Debtor on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

34.      "*CW*" means Coakley & Williams Hotel Management Company, a Maryland corporation.

35.      "*Debtor*" means OPD in its individual capacity as a debtor and debtor in possession in the Chapter 11 Case.

36.      "*DIP Credit Agreement*" means that certain Loan and Security Agreement dated as of March 28, 2011 among OPD as borrower and OPN as lender, and all documents related thereto.

37.     "*DIP Facility*" means that certain debtor in possession credit facility entered into pursuant to the DIP Credit Agreement.

38.     "*DIP Facility Claim*" means any Claim derived from or based upon the DIP Credit Agreement.

39.     "*DIP Lender*" means OPN Acquisitions, LLC, a party to the DIP Credit Agreement.

40.     "*DIP Order*" means the Order (a) Authorizing The Debtor To Obtain Postpetition Financing, Grant Security Interests And Liens And Accord Priority Status Pursuant To 11 U.S.C. §§ 361 and 364(c); (b) Modifying Automatic Stay Pursuant To 11 U.S.C. § 362(d); And (c) Granting Related Relief [Docket No. 112].

41.     "*Disclosure Statement*" means the *Disclosure Statement for the Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated July 17, 2011, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

42.     "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement.

43.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

44.     "*Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than 10 days after the Effective Date.

45.     "*Effective Date*" means the date on which the Confirmation Order becomes a Final Order; *provided, however,* in each case, the conditions specified in Article X.B. have been satisfied or waived.

46.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

47.     "*Equity Interest*" means any membership interest evidencing an ownership interest in OPD, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately before the Effective Date.

48.     "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

49.     "*Exculpated Claim*" means any claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in or out of court restructuring efforts, the Debtor's Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Plan Securities, or the distribution of property under the Plan or any other agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.  For the avoidance of doubt, no Claim, obligation or liability expressly set forth in, arising under, or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

50.     "*Exculpated Party*" means each of:  (a) the Debtor, (b) the Reorganized Debtor, (c) the DIP Lender; (d) Tiburon as member of OPD; (e) the Manager; and (x) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' subsidiaries, Affiliates, members, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other Professionals.

51.       "*Exculpation*" means the exculpation provision set forth in Article IX.D. hereof.

52.       "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

53.       "*Fee Claim*" means a Claim for Accrued Professional Compensation.

54.       "*Fifth Amendment*" means the Fifth Amendment to Operating Agreement Filed as part of the Plan Supplement.

55.       "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

56.       "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

57.       "*First Lien Debt Claim*" means the Prepetition Credit Facility Claim and any AFP Judgment.

58.       "*First Lien Debt*" means the Prepetition Credit Facility and any AFP Judgment.

59.       "*Foreclosure Action*" means the action filed by Barclays in the Superior Court of the State of New Jersey, Chancery Division, Monmouth County, against OPD, the State of New Jersey and Ricoh Americas Corporation, Docket No. F-38481-08.

60.       "*Fourth Amendment*" means the Fourth Amendment to Operating Agreement dated as of March 28, 2011 [Docket No. 111].

61.       "*General Unsecured Claims*" means any unsecured Claim against the Debtor that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Unsecured Claim, a Fee Claim, or Indemnification Claim.

62.       "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

63.       "*Holder*" means any Person or Entity holding a Claim or an Interest.

64.       "*Hotel Management Agreement*" means that certain Hotel Management Agreement by and between Reorganized OPD and Coakley & Williams Hotel Management Company entered into as of the Effective Date, the substantially final form of which, together with all exhibits thereto, shall be Filed as part of the Plan Supplement.

65.       "*Impaired*" means any Claim or Interest in an Impaired Class.

66.       "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

67.       "*Indemnification Claim*" means, collectively, (I) the indemnification Claim of William R. Dixon, Jr., Tiburon Capital LLC, David L. Orr and Orr Partners LLC related to the City Judgments and (II) the indemnification Claim of William R. Dixon, Jr., Tiburon Capital LLC, Tiburon Ocean Place LLC, David L. Orr and

Orr Partners LLC related to the Prepetition Credit Facility, and the Foreclosure Action, including the Guaranty Dated as of April 25, 2006 in favor of Barclays (as assigned to AFP) and the AFP Action.

68.      "*Interests*" means Equity Interests.

69.      "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

70.      "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

71.      "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the District of New Jersey.

72.      "*Manager*" means TCL New Jersey Corp., a Delaware corporation.

73.      "*Operating Agreement*" means the Operating Agreement of OPD dated as of April 25, 2006 and all amendments related thereto.

74.      "*OPD*" means Ocean Place Development LLC, a Delaware limited liability company.

75.      "*OPD Equity Interests*" means the Equity Interests in OPD.

76.      "*OPN*" means OPN Acquisitions, LLC.

77.      "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim or (b) a Priority Tax Claim.

78.      "*Other Unsecured Claim*" means, collectively, OPD's unsecured loan obligations to Tiburon Shores LLC ($49,584,684.85), Tiburon Capital, LLC ($6,211,152.94), Laura and Boyd Ball ($3,947.64), William Dixon, Jr. ($207,211.21) and TCL New Jersey Corp. ($18,960.77), which shall be Allowed Claims under the Plan.

79.      "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

80.      "*Petition Date*" means February 15, 2011.

81.      "*Plan*" means this *Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference.

82.      "*Plan Securities*" means, collectively, membership interests to be issued pursuant to the Plan, the Fourth Amendment, and the Plan Supplement.

83.      "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Debtor by the Plan Supplement Deadline, as it may thereafter be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement, comprising, without limitation, the following: (a) a list of Executory Contracts and Unexpired Leases to be assumed, (b) the form of the AFP Exit Documents, (c) the Fifth Amendment and (d) the Hotel Management Agreement.

84.      "*Plan Supplement Deadline*" means no later than ten (10) days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court.

85.      "*Prepetition Credit Facility*" means the Loan Agreement, dated as of April 25, 2006 (as amended, restated, supplemented or otherwise modified from time to time) and all promissory notes related thereto (as amended from time to time), among OPD, as borrower, and Barclays, as lender, as assigned to AFP.

86.      "*Prepetition Credit Facility Claims*" means any Claim derived from or based upon the Prepetition Credit Facility or the AFP Judgment.

87.      "*Prepetition Security Agreement*" means the "Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing" dated as of April 3, 2006 and effective as of April 25, 2006 (as amended, restated, supplemented or otherwise modified from time to time).

88.      "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

89.      "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

90.      "*Professional*" means an Entity:  (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

91.      "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

92.      "*Rejection Claim*" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease.

93.      "*Rejection Claims Bar Date*" means the later of: (x) the first Business Day that is 30 days after the date of entry of an order of the Bankruptcy Court approving the rejection of the relevant Executory Contract or Unexpired Lease, unless a different date is set forth in the order approving the rejection of the relevant Executory contract or Unexpired Lease; and (y) the Claims Bar Date.

94.      "*Releasing Parties*" means all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article X.B or Article IX.C, discharged pursuant to Article IX.E or are subject to exculpation pursuant to Article X.D.

95.      "*Released Party*" means each of: (a) the DIP Lender; (b) the Debtor's and the Reorganized Debtor's officers, directors, principals, employees, members, managers, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals; *provided, however,* that with respect to members, managers, officers and directors of the Debtor, only the current members, managers, directors and officers of the Debtor, any additional members, managers, officers and directors serving as of the Effective Date shall be deemed "Released Parties."

96.      "*Reorganized Debtor*" means the Debtor, in each case, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

97.      "*Reorganized OPD*" means Ocean Place Development LLC as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, transfer of substantially all assets or otherwise, on and after the Effective Date.

98.      "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

99.      "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a

Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

100.    "*Secured Claim*" means a Claim that is Secured.

101.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended.

102.    "*Tiburon*" means Tiburon Ocean Place LLC, a Delaware limited liability company.

103.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

104.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

105.    "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

106.    "*Voting Deadline*" means 5:00 p.m. (prevailing Eastern Time) on _____, 2011.

B.    *Rules of Interpretation*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of formation of the Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

**ARTICLE II.**

**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

    1.      General Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (i) on or as soon as reasonably practicable after the Effective Date, (ii) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is practicable; *provided, however,* that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order and all Claims specifically Allowed under this Plan.

    2.      DIP Facility Claim

To the extent any part of the DIP Facility Claim remains outstanding, the DIP Facility Claim shall be repaid in full on or before the Confirmation Date.

    3.      CW Claim

In furtherance of the March 23, 2011 *Order Authorizing the Debtor's Entry Into a Management Agreement with CW*, CW shall be entitled to the $100,000.00 management fee reserved in paragraph two (2) of said order and said fee shall be Allowed under the Plan and shall payable pursuant to the Hotel Management Agreement approved by said order, *provided, however,* that no monies shall be payable to Bridgeway Capital LLC on account of this previously reserved payment.

    4.      Professional Compensation

        (a)      Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date; *provided* that the Reorganized Debtor may pay retained Professionals or

-9-

other Entities in the ordinary course of business after the Confirmation Date.  Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party no later than 75 days after the Effective Date.  To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

(b)    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor's Professionals through and including the Effective Date.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

5.    Administrative Claim Bar Date

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order no later than 45 days after the Effective Date.  Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be filed and served on the Reorganized Debtor and the requesting party no later than 75 days after the Effective Date.

B.    Priority Tax Claims

1.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

C.    Other Priority Claims

Each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Other Priority Claim; (2) Cash in an aggregate amount of such Allowed Other Priority Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

D.    Statutory Fees

On the Distribution Date, Reorganized OPD shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Confirmation Date, Reorganized OPD shall pay the applicable U.S. Trustee fees until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.

B.      *Summary of Classification*

The following chart represents the general classification of Claims and Interests against the Debtor pursuant to the Plan:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | First Lien Debt Claim | Impaired | Entitled to Vote |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Other Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Indemnification Claims | Impaired | Entitled to Vote |
| 5 | OPD Equity Interests | Impaired | Entitled to Vote |

C.      *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.      Class 1 - First Lien Debt Claim

(a)      *Classification*:  Class 1 consists of the First Lien Debt Claim.

(b)      *Allowance*:  The First Lien Debt Claim shall be Allowed and deemed to be Allowed Claim in the amount of $52,252,801.26.

(c)      *Treatment*:  Holder of First Lien Debt Claim will receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of its First Lien Debt Claim, (i) a Lien on and security interest in substantially all of the Debtor's assets, (ii) payment in the amount of $5 million which shall be applied to reduce the principal amount of the First Lien Debt Claim, (iii) a mortgage and promissory note payable over seven (7) years at an interest rate of 4% per annum, with monthly interest-only payments in year one, monthly payments in year two sufficient to amortize over thirty (30) years the principal balance existing at the end of the first year, monthly payments in year three sufficient to amortize over twenty-five (25) years the principal balance existing at the end of the second year, and monthly payments in year four and thereafter sufficient to amortize over twenty (20) years the principal balance existing at the end of the third year, with a balloon payment at the maturity date and (iv) an exit fee of 1% of the principal amount of the new note payable at maturity; *provided, however* that the First Lien Debt Claim shall be governed in all respects by the AFP Exit Documents.  The AFP Exit Documents shall be filed with the Plan Supplement and shall contain standard terms and conditions for secured real estate loans of this type (a) including (i) customary covenants, terms, conditions and reserves and (ii) a partial release of Liens and security interests provision with respect to Reorganized OPD's redevelopment of the property whereby AFP will release and

discharge its Liens or be deemed to have released and discharged its Liens on and security interests in unimproved parcel(s) or portions of the property selected to be subdivided and developed by the Reorganized OPD upon payment to AFP from or on behalf of Reorganized OPD of such amount set forth in the AFP Exit Documents, and (b) not including, among other things, (i) a lockbox arrangement, (ii) controls over Reorganized OPD's bank accounts, (iii) controls over expenditures and (iv) third-party guarantees, *provided*, *however*, that the Guaranty supporting the Indemnification Claims shall remain in effect, *provided, further*, that said Guaranty obligations shall be reduced and discharged as set forth in subsection (a)(ii) of this paragraph.

(d)     *Voting*: Class 1 is Impaired.  Therefore, Holder of Class 1 First Lien Debt Claim is entitled to vote to accept or reject the Plan.

2.   Class 2 - General Unsecured Claims

(a)     *Classification*:    Class 2 consists of all General Unsecured Claims (excluding Indemnification Claims and Other Unsecured Claims).

(b)     *Treatment*: Holders of Allowed General Unsecured Claims will receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of the General Unsecured Claims, their *Pro Rata* share of $500,000 aggregate cash distribution.

(c)     *Voting*.  Class 2 is Impaired.  Therefore, Holders of Class 2 General Unsecured Claims are entitled to vote to accept or reject the Plan.

3.   Class 3 - Other Unsecured Claims

(a)     *Classification*:  Class 3 consists of all Other Unsecured Claims.

(b)     *Treatment:*  Holders of Other Unsecured Claims will not receive any distribution on account of such Claims and the Debtor and Reorganized Debtor shall be discharged, cancelled, released and extinguished from such Claims as of the Effective Date; *provider*, *however*, that on the Effective Date the Other Unsecured Claims shall be transferred to and become the obligation of Tiburon, *provided*, *further*, that Tiburon's vote in favor of the Plan shall constitute Tiburon's assumption and acceptance of the Other Unsecured Claims.

(c)     *Voting:*  Class 3 is Impaired and Holders of Class 3 Other Unsecured Claims are entitled to vote to accept or reject the Plan.

4.   Class 4 - Indemnification Claims

(a)     *Classification*:  Class 4 consists of all Indemnification Claims.

(b)     *Treatment*:    In full and final satisfaction of an Indemnity Claim, the Holder's Indemnification Claim shall be reinstated against the Reorganized OPD to the extent that the Claim becomes Allowed, *provided*, *however*, that the Indemnification Claims shall be deemed expunged or reduced upon the Reorganized OPD's satisfaction of obligations underlying said Claims, including as set forth Class 1 hereof.

(c)     *Voting*: Class 4 is Impaired and Holders of Class 4 Indemnification Claims are entitled to vote to accept or reject the Plan.

5.  <u>Class 5 - OPD Equity Interests</u>

    (a)    *Classification*:  Class 5 consists of OPD Equity Interests.

    (b)    *Treatment*:  The Holder of OPD Equity Interests (Tiburon) will not receive any cash distribution on account of such Interest; *provided*, *however*, that in exchange for its assumption of Other Unsecured Claims and contributions to the Chapter 11 Case and the Plan, on the Effective Date, the Holder of OPD's Equity Interests will be restructured and diluted in accordance with the terms of the Fourth Amendment, the Fifth Amendment and the Capital Contribution Agreement.

    (c)    *Voting*:  Class 5 is Impaired, and Holder of Class 5 OPD Equity Interests is entitled to vote to accept or reject the Plan.

## ARTICLE IV. ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the applicable Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the applicable Plan.

A.    *Acceptance or Rejection of the Plan*

1.  <u>Voting Class</u>

Classes 1, 2, 3, 4 and 5 of the Debtor are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

B.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *The DIP Facility*

On or prior to the Confirmation Date, the Debtor will have rapid the DIP Facility Claim.

B.    *AFP Exit Documents/Fifth Amendment/Capital Contribution Agreement*

On the Effective Date, the Reorganized Debtor is authorized to execute and deliver those documents comprising of the AFP Exit Documents, the Fifth Amendment and the Capital Contribution Agreement, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any person.  Notwithstanding anything to the contrary herein, the other parties to the AFP Exit Documents, the Fifth Amendment and the Capital Contribution Agreements are required to execute said documents as needed by the Debtor or the Reorganized OPD.

C.      *Sources of Consideration for Plan Distributions*

All consideration necessary for the Reorganized Debtor to make payments or distributions pursuant hereto shall be obtained from the Cash from the Debtor, including Cash from business operations and the capital contributions set forth in the Fourth Amendment and the Capital Contribution Agreement.

D.      *Issuance of Plan Securities*

The issuance of the Plan Securities, consisting of the membership rights and equity interests in the Reorganized OPD, is authorized without the need for any further corporate action or without any further action by a Holder of Claims or Interests or beneficiary thereof.

All of the Plan Securities issued pursuant to the Plan, including the Fourth Amendment, the Fifth Amendment and the Capital Contribution Agreement, shall be duly authorized, validly issued and fully paid and non-assessable.  Each distribution and issuance referred to in Article VII hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E.      *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtor under the Prepetition Credit Facility, including the AFP Judgment, and any other share, note, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan), shall be cancelled solely as to the Debtor, and the Reorganized Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements or certificate or articles of incorporation or similar documents governing the shares, membership interests, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan) shall be released and discharged. In addition, as of the Effective Date, CW's employment by the Debtor shall continue pursuant to the Hotel Management Agreement included in the Plan Supplement, which shall supersede all prior agreements between CW, the Debtor and AFP entered into during the Chapter 11 Case.

F.      *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Plan Securities contemplated by the Plan and all agreements incorporated herein, including the Fourth Amendment, the Fifth Amendment and the Capital Contribution Agreement, shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities.

G.      *Corporate Existence*

Except as otherwise provided herein, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to the Operating Agreement (or other formation documents) in effect before the Effective Date, except to the extent such Operating Agreement, including the Fourth Amendment and the Fifth Amendment, (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state law).

H.      *Post Effective Date Management*

The Manager shall continue to be a manager after the Effective Date.  OP Management, LLC also shall be a manager after the Effective Date as set forth in the Fourth Amendment.  Each manager shall be entitled to a management fee as set forth in the Fourth Amendment, or as otherwise agreed to by both the manager and OP Management, LLC.

I.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property of the Estate, all Causes of Action (except those released pursuant to the Releases by the Debtor), and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens granted to AFP in the AFP Exit Documents).  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided, however,* the Bankruptcy Court shall retain jurisdiction as set forth in Article XII hereof.

J.      *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

K.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (1) entry into the Capital Contribution Agreement and the Fifth Amendment; (2) the distribution of the Plan Securities as provided herein; and (3) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, members, managers, directors or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate members, managers and/or officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including the AFP Exit Documents, the Capital Contribution Agreement and the Fifth Amendment, and any and all other agreements, documents, securities and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article V.K shall be effective notwithstanding any requirements under nonbankruptcy law.

L.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor and the managers, officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by Article V.J hereof; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

N.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the Debtor provided by Article IX.B hereof), the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor or Reorganized Debtor has released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtor or otherwise), the Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, each of the Debtor's Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified as an Executory Contract

or Unexpired Lease to be assumed pursuant to the Plan Supplement, including any amendments before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or rejections of such Executory Contracts and Unexpired Leases in the Plan are effective as of the Effective Date.  Each such Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order.  Notwithstanding anything to the contrary in the Plan, the Debtor or Reorganized Debtor, as applicable, reserve the right, to alter, amend, modify or supplement the list of Executory Contracts and Unexpired Leases identified in the Plan Supplement.

B.      Payments Related to Assumption of Executory Contracts and Unexpired Leases

With respect to any Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant hereto (including pursuant to Article VI.A hereof) or otherwise, Cure Claims shall be satisfied, pursuant to section 365(b) of the Bankruptcy Code, by payment of the Cure Claims in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree.  In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365(b) of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; *provided, however,* that the Debtor or the Reorganized Debtor may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

C.      Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor or Reorganized Debtor, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

D.      Contracts and Leases Entered Into After the Petition Date

On and after the Effective Date, the Debtor may continue to perform under contracts and leases entered into after the Petition Date by the Debtor in the ordinary course of business, including any Executory Contracts and Unexpired Leases assumed by the Debtor.

E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any,

including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

G.      **Rejection Claims Bar Date**

**Notwithstanding anything herein to the contrary, any Creditor holding a Rejection Claim must File a Proof of Claim on account of such Claim with the Bankruptcy Court on or before the Rejection Claims Bar Date.  All Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtor or the Reorganized Debtor, its Estate, and its property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E and Article IX.F hereof.**

**ARTICLE VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Record Date for Distributions*

As of the Voting Deadline, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Bankruptcy Court, the Debtor or its agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests.  The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

C.      *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Entity designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

D.      *Rights and Powers of Disbursing Agent*

1.      <u>Powers of the Disbursing Agent</u>

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

E.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      <u>Payments and Distributions on Disputed Claims</u>

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      <u>Special Rules for Distributions to Holders of Disputed Claims</u>

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

F.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Voting Deadline by the Reorganized Debtor or the Disbursing Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor or the Disbursing Agent, as appropriate, after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor or the Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  Distributions under the Plan on account of Allowed

Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtor, the Reorganized Debtor, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

       2.   <u>Minimum Distributions</u>

The Reorganized Debtor and Disbursing Agent shall not be required to make partial or fractional distributions or distributions of $20 or less.

       3.   <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such Holder without interest; *provided, however,* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six (6) months from the Effective Date.  After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

*G.*     *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

*H.*     *Setoffs*

The Debtor and the Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights, and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

*I.*     *Claims Paid or Payable by Third Parties*

       1.   <u>Claims Paid by Third Parties</u>

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the

distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.   Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Prosecution of Objections to Claims*

The Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Debtor and the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Debtor reserves all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

B.      *Allowance of Claims and Interests*

Except as expressly provided herein, no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim under section 502 of the Bankruptcy Code.  Except as expressly provided herein or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), the Reorganized Debtor after the Effective Date will have and retain any and all rights and defenses held by the Debtor with respect to any Claim as of the Petition Date.  All claims of any Entity that owes money to the Debtor shall be disallowed unless and until such Entity pays, in full, the amount it owes the Debtor.

C.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

D.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes

a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

E.        Estimation of Claims

        The Debtor (before the Effective Date) or Reorganized Debtor (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or the Reorganized Debtor (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.        Expungement or Adjustment to Claims Without Objection

        Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

G.        Deadline to File Objections to Claims

        Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

## ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.        Compromise and Settlement of Claims, Interests, and Controversies

        Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.    The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Entities.

B.        **Releases by the Debtor**

        **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties and the Debtor's members, managers, officers and directors are deemed released and discharged by the Debtor, the**

Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, the Reorganized Debtor, the Estate, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.

C.      *Releases by Holders of Claims and Interests*

As of the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth herein does not release (i) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) the AFP Action Defendants from Claims set forth in the AFP Action and (iii) the City Judgments, including all defendants in the action commenced by the City of Long Branch marked as Docket No. MON-L-4604-08 with respect to those judgments and that action.

Nothing in the Confirmation Order or the Plan shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Reorganized Debtor, or Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor, the Reorganized Debtor or Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Debtor, the Reorganized Debtor and Released Parties. This paragraph, however, shall in no way affect or limit the discharge granted to the Debtor under sections 524 and 1141 of the Bankruptcy Code.

D.      **Exculpation**

        **Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtor and the Reorganized Debtor (and its respective Affiliates, members, managers, agents, directors, officers, employees, advisors, and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan Securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

E.      *Discharge of Claims and Termination of Interests*

        Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtor or its Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

F.      *Injunction*

        FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

        FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE IX HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX HEREOF.

        EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C, DISCHARGED PURSUANT TO ARTICLE IX.E, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.E ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS

OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE EQUITY INTERESTS SHALL BE MODIFIED AS SET FORTH HEREIN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE EQUITY INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, ITS RESPECTIVE SUCCESSORS AND ASSIGNS, AND ITS ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, ABSENT REORGANIZED OPD'S DEFAULT UNDER THE AFP EXIT DOCUMENTS THAT IS CONTINUING FOR NO LESS THAN SIXTY (60) DAYS FROM THE DATE OF REORGANIZED OPD'S RECEIPT FROM AFP OF A WRITTEN NOTICE OF SAID DEFAULT, AFP SHALL BE ENJOINED AND PRECLUDED FROM CONTINUING THE AFP ACTION, OR ANY VARIATION THEREOF, AGAINST THE AFP ACTION DEFENDANTS; *PROVIDED, HOWEVER*, THAT AFP'S ASSERTION OF DEFAULT MUST BE EITHER AGREED TO BY REORGANIZED OPD OR ADJUDICATED BY THE BANKRUPTCY COURT.

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor or another Entity with whom such Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

I.       *Setoff and Recoupment*

**Except with respect to Claims or payments allowed in or provided for under the Plan, the Debtor may setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but the failure to do so shall not constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim it may have against such claimant.**

J.       *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan and, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, judgments or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, judgments or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  Notwithstanding the foregoing, on the Effective Date and as more fully set forth in the AFP Exit Documents, AFP shall be granted new Liens on and security interests in substantially all of the Reorganized OPD's assets.

K.       *Releases of Governmental Claims*

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

A.       *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.       *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article X.C. hereof.

1.       The Confirmation Order (a) shall be a Final Order in form and substance acceptable to the Debtor subject to receiving consent from OPN (which consent shall not be unreasonably withheld) and (b) shall include a finding by the Bankruptcy Court that the Plan Securities to be issued on the Effective Date will be authorized and exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code.

2.       The Plan, including any amendments, modifications, or supplements thereto shall be reasonably acceptable to the Debtor subject to receiving consent from OPN (which consent shall not be unreasonably withheld).

3.    The Plan Supplement, including any amendments, modifications, or supplements thereto shall be reasonably acceptable to the Debtor subject to receiving consent from OPN (which consent shall not be unreasonably withheld).

4.    A sufficient amount of funds as set forth in the Fourth and Fifth Amendments to the Operating Agreement and the Capital Contribution Agreement shall have been received by the Debtor.

5.    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article X may be waived at any time by the Debtor; *provided, however,* that the Debtor may not waive entry of the Order approving the Disclosure Statement, the Confirmation Order or any condition the waiver of which is proscribed by law.  Any such waivers shall be evidenced by a writing, signed by the waiving parties, served upon the U.S. Trustee and Filed with the Bankruptcy Court.  The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

D.    *Effective Date*

The Effective Date shall be the date on which the Confirmation Order becomes a Final Order; *provided, however,* the conditions specified in Article X.B. have been satisfied or waived.

E.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## ARTICLE XI.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Except as otherwise specifically provided herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired.

4.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor and the AFP Action Defendants that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    during the period of time that the Reorganized OPD's obligations under the AFP Exit Documents remain unsatisfied, enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

9.   enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with or under the Prepetition Security Agreement;

12.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article IX and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.I.1;

15.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.  adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.  determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.  hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.  enforce all orders previously entered by the Bankruptcy Court;

24.  hear any other matter not inconsistent with the Bankruptcy Code; and

25.  enter an order concluding or closing the Chapter 11 Case.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article X.B, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B.     *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   The Debtor or Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

D.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on:

Ocean Place Development LLC
One Ocean Boulevard
Long Branch, NJ 07740
Attn:  William R. Dixon, Jr.

with copies to:

LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Attn: John K. Sherwood and Wojciech F. Jung

-and-

TCL NEW JERSEY CORP.
2656 Bridgeway, Suite 201
Sausalito, CA 94965
Attn:  Laura Ball

-and-

OPN ACQUISITIONS LLC
1 Kathleen Drive, Suite 1
Jackson, NJ  08527
Attn:  Jeffrey Fernbach

After the Effective Date, the Debtor may, in its sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.      *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.      *Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

H.      *Exhibits*

All exhibits and documents included in the Plan Supplement and the Capital Contribution Agreement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel or the Bankruptcy Court's web site at *www.njb.uscourts.gov*.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its Affiliates, agents, representatives, members, managers, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Plan Securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable

law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Plan Securities offered and sold under the Plan.

J.      *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

K.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however,* that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

L.      *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.


Dated:  July 17, 2011

                            Respectfully submitted,

                            OCEAN PLACE DEVELOPMENT LLC

                    By:     /s/ *William R. Dixon, Jr.*
                            By: William R. Dixon, Jr.
                            Vice-President of TCL New Jersey Corp.,
                            Manager of Ocean Place Development
                            LLC