**WEBBER MCGILL LLC**
760 Route 10, Suite 203
Whippany, New Jersey 07901
(973) 739-9559
Douglas J. McGill, Esq. (DM 0436)

    and

**BOND SCHOENECK & KING, PLLC**
350 Linden Oaks, Suite 310
Rochester, New York 14625-2825
(585) 362-4700
Francis L. Gorman, III, Esq. (FG 4506)

*Attorneys for David L. Orr and Orr Partners, LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 11-14295 (MBK) |
| OCEAN PLACE DEVELOPMENT LLC, | Chapter 11 |
| Debtor. | Honorable Michael B. Kaplan |

### DAVID L. ORR AND ORR PARTNERS, LLC'S OBJECTION TO THE DEBTOR'S DISCLOSURE STATEMENT TO DEBTOR'S PLAN OF REORGANIZATION AND RESERVATION OF RIGHTS

TO:   HONORABLE MICHAEL B. KAPLAN
       UNITED STATES BANKRUPTCY JUDGE

David L. Orr and Orr Partners, LLC ("Orr"), an unsecured creditor of Ocean Place Development LLC (the "Debtor") and a party in interest herein, by and through its attorneys, Weber McGill LLC and Bond, Schoeneck & King, PLLC, hereby submit this Objection (the "Objection") to the Debtor's Disclosure Statement to Debtor's Plan of Reorganization [docket # 230] (the "Disclosure Statement")  In support of this Objection to the Disclosure Statement Orr respectfully states as follows:

1878375.7

## **PRELIMINARY STATEMENT**

1. Orr has two filed contingent right of subrogation/indemnification claims in this proceeding for approximately $56,733,117.90 and $56,638,058 arising from Orr's conditional guaranty of amounts loaned to Debtor by Barclays Capital Real Estate, Inc. ("Barclays") and arising from Orr's guaranty of obligations due from the Debtor to the City of Long Branch, New Jersey (the "Orr Indemnification Claims") (Claim Numbers 69-1 and 70-1 respectively).

2. Orr is filing this Objection to state is general objections to the approval of the Debtor's Disclosure Statement and reserves its right to file supplemental objections and supplemental pleadings related to these objections.

3. The Debtor's Disclosure Statement purports to give adequate information regarding the Debtor's Plan of Reorganization [docket # 232] dated July 17, 2011 (the "Plan"). As an initial and crucial matter, the Plan proposes payment to creditors over a number of years after the Effective Date, but neither the Disclosure Statement nor the Plan contains detailed support for the basis of its projections of the Debtor's performance over that period. The Disclosure Statement includes as Exhibit B only annual projections through 2014 and does not include any short-term, monthly projections or financial information with respect to Debtor's post-petition financial performance. Such information would be particularly helpful due to the seasonality of the Debtor's business.

4. Further, approval of the Disclosure Statement should be conditioned upon: 1) a complete description of the available assets and their value including the value of the zoning entitlements and residual land/excess land as appraised in prior appraisals by CBRE and this would include any value in the Redevelopment Agreement with the City of Long Branch, New Jersey as well as a further description and analysis of the accounts receivable set forth in

Debtor's schedules; 2) a discussion of the post-petition financial performance of the Debtor and the assumptions underlying and basis for the post-confirmation financial projections; and, 3) a more detailed description of the collectability of accounts receivable and a discussion of whether avoidance actions will be pursued and the estimated recovery of same.

## BACKGROUND

5.   On February 15, 2011 ("Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has been operating its businesses and managing its assets as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.   Prior to the Debtor's filing of its petition, AFP 104 Corp. as successor-in-interest to Barclay's scheduled a foreclosure sale to foreclose certain mortgages and security agreements, which mortgages and security interests are purportedly first liens on Debtor's real and personal property assets (the "Foreclosure Action").

## ARGUMENT

**I.   The Disclosure Statement Does Not Contain Adequate Information.**

7.   Before the acceptance or rejection of a plan of reorganization may be solicited, a chapter 11 debtor must provide a written disclosure statement containing adequate information to the holders of claims or interests. 11 U.S.C. § 1125(b).  Adequate information is defined as information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor to make an informed judgment about the plan or reorganization.  <u>In re</u> <u>A.C. Williams Co.</u>, 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982).  Section 1125 of the Bankruptcy Code permits the Court to construe the adequacy of disclosure statements on a case-by-case-basis.  Id.

8. Courts have denied approval of a disclosure statement where the allegations contained in the statement were "unsupported by factual information so that voting parties were unable to independently evaluate the merits of the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.NY 1988) (internal citations omitted). Congress intended the disclosure statement to be the primary source of information that will allow creditors and shareholders to make informed decisions regarding the proposed plan. *In re Egan*, 33 B.R. 672, 675 (Bankr. N.D. Ill. 1983).

9. Courts have considered a non-exclusive list of factors[1] to be used to determine whether adequate information has been provided. *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988) (the court denied approval of a disclosure statement for failure to contain adequate information regarding feasibility, liquidation analysis, and identity of investors in the reorganized debtor). *See also In re A.C. Williams*, 25 B.R. at 176.

---

[1] 1. The circumstances that gave rise to the filing of the bankruptcy petition;
2. A complete description of the available assets and their value;
3. The anticipated future of the debtor;
4. The source of the information provided in the disclosure statement;
5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;
6. The condition and performance of the debtor while in Chapter 11;
7. Information regarding claims against the estate;
8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;
9. The accounting and valuation methods used to produce the financial information in the disclosure statement;
10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;
11. A summary of the plan of reorganization;
12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;
13. The collectability of any accounts receivable;
14. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;
15. Information relevant to the risks being taken by the creditors and interest holders;
16. The actual or projected value that can be obtained from avoidable transfers;
17. The existence, likelihood and possible success of non-bankruptcy litigation;
18. The tax consequences of the plan; and
19. The relationship of the debtor with affiliates.

*In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988).

1878375.7

### A.  The Disclosure Statement Does Not Provide a Complete Description of the Available Assets and Their Value

10. The Disclosure Statement references certain zoning entitlements for potentially major development and references a Redevelopment Agreement with the City of Long Branch but provides little detail. Disclosure Statement at Section III.B.

11. The Redevelopment Agreement, as referenced in the Disclosure Statement appears to permit the project to increase its current square footage approximately 700% from the current 214,481 square feet to 1,496,163 square feet. While the Debtor acknowledges that its rights under the Redevelopment Agreement "have value" it appears that neither the Disclosure Statement nor Plan quantify that value.

12. The Disclosure Statement also references the potential for rejecting the Redevelopment Agreement but does not appear to address what potential negative economic consequences may befall OPD should that Agreement be rejected.

13. Presumably the Redevelopment Agreement covers the "Excess Land Residual" referenced in footnote 3 on page 13 of the Disclosure Statement. See Disclosure Statement at Section III.D. Footnote 3 states that pursuant to an appraisal report of February 24, 2006 the "Excess Land Residual" was valued at $33.3million. In a "Restricted Appraisal Report" dated February 26, 2007 the "Excess Land – As Is" (presumably the same land as the "Excess Land Residual") was valued at $104million. A third appraisal (all appraisals were performed by CBRE) ascribes an "as is" value of $60.8 million to the Debtor's "Land Residual."

14. Orr is unclear as to the Debtor's treatment of the so called "Residual or Excess Land" under the Disclosure Statement and Proposed Plan, how the "certain zoning entitlements for the potentially major additional development" affect this valuation, what the status is with respect to those zoning entitlements, how the Excess Land and zoning entitlements play into the

5

anticipated future of the Debtor. Additionally, the so-called "Residual or Excess Land" and the zoning entitlements with respect thereto do not appear to be addressed in the liquidation analysis of the Debtor nor does the Disclosure Statement address and whether the new equity investor whom, upon information and belief specializes in residential developments will be involved in the development of the excess land and his compensation therefore.

15. Furthermore, there have long been discussions regarding a commutation pier immediately adjacent to the subject property. The Disclosure Statement does not address the status of the City of Long Branch's interest in the proposed commutation pier and what effect if any that may have on and value of the redevelopment entitlements, redevelopment rights and future development potential for the so called Excess or Residual land.

16. The Debtor has filed pleadings to retain CBRE [docket # 243] as an appraiser and Orr is hopeful that such an appraisal will address the issues Orr has raised above.

17. As a point of clarification, and notwithstanding the release language in the Disclosure Statement and Plan, the same do appear to provide that the Orr Indemnification Claims, including with respect to the City of Long Branch Judgment, will be assumed by the Reorganized Debtor.

**B.     The Disclosure Statement Does Not Address the Debtor's Postpetition Financial Performance or Post-Effective Date Projections.**

18. The Disclosure Statement fails to disclose Debtor's post-petition financial performance. This is a crucial piece of information that the Debtor should not omit from its Disclosure Statement. Without monthly post-effective date projections, not to mention an up-to-date assessment of current actual postpetition financial performance, a hypothetical creditor cannot make an informed judgment regarding the Plan.

1878375.7

19. A disclosure statement must provide adequate disclosure of financial projections, especially here, where the Debtor's business is somewhat seasonable in nature. Disclosure with respect to financial projections prepared on a reasonable basis in good faith with assumptions and risks clearly set forth is necessary to allow creditors and equity security holders to assess the risks under the Plan of Reorganization.

20. The Debtor appears to have omitted detailed post-petition and post-effective date financial information. The standard of information to be provided was articulated in the case of *In re Cardinal Congregate I*, 121 B.R. 760 (Bankr. S.D. Ohio 1990), in which the Court found that a disclosure statement that contained more financial information than the Debtor's Disclosure Statement did not provide adequate information. In *Cardinal Congregate*, the Court determined that:

> [T]he disclosure statement must contain more information regarding the debtor's operations post petition. It is not enough that the disclosure statement refers the reader to the monthly operating reports filed by the debtor with [the] court; the disclosure statement should contain a detailed textual description of the debtor's post petition performance…[Also], the disclosure statement should include a discussion of the anticipated future of the debtor's business. Further, the disclosure statement should clearly identify all assumptions made in calculating [projections] and should set forth those facts supporting all estimates. Information regarding the accounting and valuation methods used in preparation of the disclosure statement financial exhibits must also be included.

21. *Id*. at 767 (emphasis added). The Debtor's Disclosure Statement contains very little information in this regard and would appear to fail to meet the *Cardinal Congregate I* criteria for the disclosure of financial information.[2]

---

[2] Merely referring the reader to monthly operating reports filed with the court is not sufficient to fulfill the post petition financial information requirement. *See, e.g., In re Ferretti*, 128 B.R. 16 (Bankr. D. N.H. 1991).

1878375.7

22. There is also no discussion of the basis upon which the Debtor projects it future income and its material Net Operating Income increase from 2011-2014. What industry benchmarks were used, what is the basis for the increase in the average daily rate and occupancy of the hotel, what was the competitive set upon which the Debtor based these projections, was an HVS or STR report commissioned? None of this information was provided and it is without argument that such information would be required by a hypothetical reasonable investor prior to making an informed judgment about the plan of reorganization.

### C. The Disclosure Statement Does not Address the Collectability of Account Receivables Nor Does it Detail Whether Avoidance Actions will be Pursued and the Estimated Recovery of Same

23. The Debtor's schedules reflect 4 accounts receivable, 2 that are material, to wit, one for $68,433.85 and a second for $480.542.37. These should be detailed and a statement should be made as to their collectability.

24. Additionally, while the Debtor has retained an accountant post-petition [docket # 243] there is no discussion whether an any analysis will be down with respect to any pre-filing transfer that may be avoided as preferences, fraudulent transfers or the like.

25. The Debtor's Disclosure Statement discusses set off and recoupment but it does not detail whether this will occur pursuant to court order or be unilaterally imposed by Debtor and somehow "pre-approved" by confirmation of its Plan.

**WHEREFORE**, Orr respectfully requests that this Court enter an Order (a) addressing the issues raised herein prior to approving Debtor's Disclosure Statement; (b) finding that the Disclosure Statement lacks adequate information and violates the absolute priority rule; and (c) awarding Orr such other and further relief as this Court deems appropriate.

       Respectfully submitted,

       **WEBBER MCGILL LLC**


       By: /s/ Douglas J. McGill
           Douglas J. McGill
       760 Route 10, Suite 203
       Whippany, New Jersey 07981
       Telephone: (973) 739-9559
       Email: dmcgill@webbermcgill.com

          and

       **BOND, SCHOENECK & KING, PLLC**


       By: /s/ Francis L. Gorman, III
          Francis L. Gorman, III
       350 Linden Oaks, Suite 310
       Rochester, New York 14625-2825
       Telephone: (585) 362-4700
       Email: flgorman@bsk.com

Dated: August 8, 2011